SPENCER COMMERCIAL CLUB *v.* BARTMESS ET AL.

[No. 9,888.   Filed May 29, 1919.]

1.  BANKRUPTCY.—*Claims.—Allowance.—Effect.*—The action of a
referee in bankruptcy in the allowance of a claim is *res adjudicata*
as to all who have been made parties to the proceedings in the
bankruptcy court.   p. 302.

2.  BANKRUPTCY.—*Bankrupt's Estate. — Custody. — Jurisdiction of
Court.—Determination of Claims.*—Upon the filing of a petition
in bankruptcy followed by an adjudication, all property in the
possession of the bankrupt of which he claims ownership passes
at once into the custody of the court of bankruptcy, and becomes
subject to its jurisdiction to determine all adverse or conflicting
claims thereto, whether of title or liens.   p. 302.

3.  ESTOPPEL.—*Estoppel by Conduct.—Failure to Assert Title to
Land.*—Where a commercial club had its president convey land
knowing that he had previously conveyed it to a trustee, and for
more than two years after grantee's bankruptcy failed to assert
any claim to the property, though the bankruptcy court had
adjudged valid a mortgage given by the grantee, the club was
estopped from thereafter claiming the property as against the
mortgagee.   pp. 303, 304.

4.  ESTOPPEL.—*Estoppel by Words or Conduct.*—When a person by
his words or conduct causes another to believe the existence of
a certain state of things, and induces him to act on that belief
so as to alter his own position, the former is precluded from
averring a different state of things as existing.   p. 303.

5.  ESTOPPEL.—*Estoppel by Deed.—Interest Conveyed.*—Where the
president of defendant commercial club, in his capacity as trustee
of an insolvent company, transferred the company's real estate
to another under an agreement that if plaintiff fulfilled a certain
contract the land should be deeded to him, and if he failed it
should be conveyed to the club, and subsequently, after certain
changes were made in the contract, the directors of the club
ordered a deed prepared conveying the property to plaintiff and
had it executed by its president as such trustee, although unknown
to plaintiff, he had filed his final report and been discharged, such
deed was sufficient to pass to grantee whatever equitable interest
the club had in the land, notwithstanding the conveyance was
ineffectual to carry the legal title.   p. 303.

6.  ESTOPPEL.—*Estoppel by Deed.*—The owner of real estate attest-
ing a deed made by a person having no title, if such owner knows

the contents of the deed, will by attesting it be estopped from setting up his own title against the grantee and his privies. p. 304.

From Owen Circuit Court; *Robert W. Miers,* Judge.

Action by Ulysses S. Bartmess against the Spencer Commercial Club, which cross-complained, bringing in as defendants May Bartmess and others. From a judgment in favor of May Bartmess, the defendant appeals. *Affirmed.*

*Homer Elliott* and *Inman H. Fowler,* for appellant.
*Hickam & Hickam* and *Fesler, Elam & Young,* for appellees.

McMahan, J.—The appellee Ulysses S. Bartmess began this action by filing his complaint to quiet title to certain real estate in Owen county, Indiana. The appellant filed a cross-complaint against the original plaintiff and a large number of other parties, including May Bartmess, wife of Ulysses S. Bartmess, wherein the appellant asked that the title to said real estate be quieted in it. The cause being at issue was submitted to the court for trial. The court, at the request of the parties, found the facts specially and stated its conclusions of law thereon.

The facts, as found by the court, are substantially as follows: The appellant is a corporation organized for the purpose of procuring factories to locate and operate in the town of Spencer, and for that purpose purchased forty acres of land adjoining the town and platted it into lots which it sold, the proceeds being used to induce factories to locate and operate in said town.

Prior to September 28, 1910, the Spencer Co-operative Bottle Company was the owner of the land in

controversy, upon which there was located a bottle factory, and, being insolvent, made an assignment for the benefit of its creditors, and deeded said real estate and factory to John H. Smith as trustee, he being the president of the Spencer Commercial Club.

The appellant, in order to induce the appellee Ulysses S. Bartmess to purchase the real estate and bottle factory formerly owned by said bottle company, and to operate said factory, entered into a written contract with said Bartmess, wherein it agreed to, and did, convey to said Bartmess the title to fifty-nine lots in appellant's said subdivision, and, said lots having been sold on contracts, assigned to said Bartmess the contracts of the purchasers for the unpaid purchase money for said fifty-nine lots. The appellant also agreed to take charge of said sale contracts, collect the money due on them, and turn over to Bartmess $7,000 thereof, with interest until paid, as a bonus for purchasing, repairing and operating the factory. Bartmess agreed to execute deeds to the purchasers of the lots as the appellant turned over the purchase money to him. Bartmess borrowed $7,000 from the Exchange Bank of Spencer and assigned said lot contract to the bank as collateral to secure his promissory note for $7,000. Bartmess never paid anything on said note except $350, which the bank collected on said contracts and which it applied on said note. The appellant also agreed to give Bartmess its promissory note for $15,000, secured by mortgage on certain other lots in said addition, said Bartmess agreeing to put said bottle factory in good repair and to operate it with an average of twelve shops and employing approximately 100 men for not less than nine months a year for a period of three

years. It was agreed that said Smith, as trustee of said bottle company, should deed said factory and real estate in controversy to some citizen of Spencer, who should hold the same pending performance of said contract by Bartmess, and, if he performed the contract, the plant was to be deeded to him, and, if he failed, it should be deeded to appellant.

Smith as such trustee obtained an order from the Owen Circuit Court authorizing the sale of the real estate in controversy at a private sale, and he thereupon reported that he had sold the same to said Bartmess for $15,000, which sale was approved and, by agreement between appellant and appellee Bartmess, the deed was made to Temple G. Pierson as trustee. Said deed was reported to the court and entered in the order book of said court, but was not recorded in the recorder's office of said county. The appellant executed its note to said Bartmess for $15,000, and he assigned said note to Smith as trustee in full payment of the purchase price of said real estate.

Said Bartmess began to operate said bottle factory in January, 1911, and continued to operate it until August 11, 1912, when he closed it, and no further business was done therein.

At a meeting of the board of directors of appellant in August, 1912, Bartmess requested that appellant make him a deed of the real estate in controversy, saying that his business was prosperous, but that he could not proceed until the plant was overhauled; that he meant to reorganize the business and erect a steel building; that he must raise money, but could not do so unless the title was in his name, so he could float an issue of stock or bonds; that, inasmuch as appellant had not collected on the lots, he ought not to be

required and compelled to operate the plant three years before obtaining a deed. Appellant agreed to this, and a few days later, acting under orders of the board of directors of appellant, Homer Elliott, its secretary prepared a deed for the property to Bartmess, and had said Smith, as trustee for the bottle company, execute the same, forgetting that Smith as such trustee had prior thereto made a deed to Pierson, as before stated, and that he had made his final report and had been discharged. Bartmess, not knowing such facts or that the deed did not convey to him a perfect title, accepted said deed, recorded it September 23, 1912, and continued in possession of the property under the deed. No deed was ever executed by Pierson, and he still holds the legal title to the real estate as trustee for appellant and Ulysses S. Bartmess.

Bartmess never repaired said plant, and did not resume operations, but soon after obtaining said deed made a voluntary assignment, and was afterwards, on petition of some of his creditors, adjudged a bankrupt, said Homer Elliott, the secretary of appellant, being elected as trustee of the bankrupt estate and qualified as such. That said Bartmess in September, 1912, and within a few days after securing the deed, executed a mortgage on said real estate to his wife, May Bartmess, to secure a note for $5,000 that his wife had loaned him in 1910; that Mrs. Bartmess filed her claim on said note and mortgage with the referee in bankruptcy; that said Elliott as trustee filed his answer to said claim and also his petition asking that it be held fraudulent and void, alleging that it was executed to obtain a preference and that it was for an antecedent debt. A trial was had on such claim

at which John H. Smith, president, and Homer Elliott, secretary, of appellant, were present and testified as witnesses for said Elliott in his effort to prevent the allowance of said claim, and aided and counseled with the attorneys for said Elliott in the defense to said claim. Mr. and Mrs. Bartmess were also present at such trial and testified. The referee found that the claim of Mrs. Bartmess should be allowed as a valid claim secured by said mortgage, with interest from August 1, 1912, and a decree was entered accordingly. The appellees Hickam and Hickam, and Elam and Fesler, having been employed as attorneys for Mr. and Mrs. Bartmess in said bankruptcy proceedings on October 23, 1913, took a note for $1,000 from Bartmess and his wife, said note being also secured by a mortgage on the real estate in controversy. Bartmess was discharged as a bankrupt on July 21, 1913, but, being a householder and entitled to an exemption of $600, said real estate was set off to him subject to said mortgage, and his estate was settled as one with no assets.

The said note of $7,000 given to the Exchange Bank was liquidated and discharged in said bankruptcy proceedings. The full possession of the real estate in controversy was turned over to Bartmess by said Elliott, as trustee in bankruptcy, in pursuance of an order of the court, and he has ever since had full control and possession over the same, all of which was done with the knowledge of, and without objection on the part of, appellant.

The court concluded as a matter of law: (1) That appellant's title to the real estate should be quieted as to all defendants except Mrs. Bartmess; and (2) that her mortgage was a valid and subsisting lien upon the real estate.

The errors assigned in this court are that the court erred in its conclusions of law.

The sole question for our determination relates to the validity of the mortgage given to appellee May Bartmess. She is the only appellee who has filed a brief in this court, so, when we refer to the appellee, it will be understood that we refer to her.

The appellant insists that this mortgage was given to secure a pre-existing debt, and was therefore void as against appellant, while appellee insists that under the facts her mortgage is valid, that the proceedings in the bankruptcy court amount to an adjudication of the validity of her mortgage, and that the appellant's conduct has been such as to estop it from asserting title to the real estate in controversy.

Appellant contends that a mortgagee who takes a mortgage to secure a pre-existing debt must at the time of taking the mortgage, in order to make it valid as against prior and superior equities, have paid a new and valuable consideration therefor, canceled or surrendered his old debt, or in some way placed himself in a worse condition than he was before the mortgage was given.

Appellee does not attempt to controvert this legal position as contended for by appellant. She insists that the original contract between appellant and her husband was superseded by an agreement made in August, 1912, by the terms of which the appellant agreed to give her husband a deed; that the deed was prepared by the secretary of appellant and signed by John H. Smith, who was president of appellant, they both acting under the authority and direction of the board of directors of appellant; that this deed was intended to, and in equity did, pass all the interest of

appellant; that it was effective for that purpose and
constituted a complete transfer of the equitable title.

At the time this deed was executed the order book
entries in the Owen Circuit Court in the receivership
of the bottle company disclosed that Smith, as trus-
tee, had sold the property to Bartmess for $15,000;
that Smith reported said sale to the court; that it
was approved, and that a deed had been ordered. The
deed, however, by agreement, was made to Pierson,
and not to Bartmess, but was never recorded in the
recorder's office. It was the intention of the board
of directors of appellant to convey the fee-simple
title of the real estate in controversy to Ulysses S.
Bartmess, and, in order to carry out that intention,
said directors authorized and directed its secretary,
Homer Elliott, to prepare a deed for that purpose,
which he did, but, overlooking the fact that a deed
had been made to Pierson as trustee, he named John
H. Smith as grantor, instead of Pierson. The deed
was properly signed by John H. Smith, acknowledged
and delivered to Mr. Bartmess with the intention and
belief of all the parties, including appellant, that it
did in fact convey the title to said real estate to
Ulysses S. Bartmess. After the deed was executed
and recorded, the mortgage to appellee was executed,
and, when the proceedings in bankruptcy were pend-
ing, all the right, title and interest of Ulysses S. Bart-
mess in said real estate, including the possession,
were in Homer Elliott, the trustee in bankruptcy.
When the appellee filed her note and mortgage as a
claim against said estate, Homer Elliott, who was
the secretary of appellant and the trustee in bank-
ruptcy, and who is one of appellant's attorneys in
this appeal, resisted the allowance of appellee's claim.

He and John H. Smith, president of appellant, the grantor in the deed to Bartmess and the cashier of the Exchange Bank, which was also a creditor of said bankrupt estate, were present at the trial of appellee's claim, testified as witnesses against her, and aided and counseled with the attorneys for the trustee in bankruptcy, doing all in their power to have the claim of appellee · disallowed. They were then contending that the real estate now in controversy belonged to the estate of Ulysses S. Bartmess, bankrupt, and that it should be sold by Homer Elliott as trustee to pay the debts of said Bartmess, a position entirely inconsistent with their present one.

The facts as found by the court do not disclose whether the appellant was named as a creditor or interested party in the proceedings in bankruptcy. 1. If appellant was a party to the proceedings in bankruptcy, our task would be easy and our course clear, as it is universally held that the action of a referee in bankruptcy in the allowance of a claim is *res adjudicata* as to all who have been made parties to the proceedings in the bankruptcy court.

Upon the filing of a petition in bankruptcy, followed by an adjudication, all property in the possession of the bankrupt of which he claims ownership 2. passes at once into the custody of the court of bankruptcy, and becomes subject to its jurisdiction to determine all adverse or conflicting claims thereto, whether of title or liens. *In re Schermerhorn* (1906), 145 Fed. 341, 76 C. C. A. 215. See, also, *In re Kellogg* (1903), 121 Fed. 333, 57 C. C. A. 547.

Ought the appellant, in view of all the facts and

circumstances disclosed in this case, be permitted, after a delay of over two years, after it has 3. stood by and with knowledge permitted the court and the public to deal with the property as belonging to Ulysses S. Bartmess, now claim the property free and clear of a claim that was litigated in the bankrupt court, and which was by that court found to be a valid lien on said real estate?

We would remind appellant that "he who keeps silent when duty commands him to speak shall not speak when duty commands him to keep silent." Appellant, by its act in having John H. Smith make the deed to Bartmess, represented that Smith had the power and authority to make such deed and to convey the title, and it ought in equity to make that representation true.

The rule of law is clear that, when one by his words or conduct causes another to believe the existence of a certain state of things, and induces him 4. to act on that belief so as to alter his own position, the former is precluded from averring a different state of things as existing. *Pickard* v. *Sears* (1837), 6 Ad. & E. 469; *Stevens* v. *Dennett* (1872), 51 N. H. 324.

The appellant had an equitable interest in the real estate which it could have conveyed to Bartmess, and it is our judgment that whatever title it could 5. have passed by deed did in equity pass by the deed from Smith, trustee, to Bartmess. As said in *Fallon* v. *Kehoe* (1869), 38 Cal. 44, 99 Am. Dec. 347: "We apprehend there can be but little doubt on this point, and we do not understand counsel as controverting the proposition, that, if the true owner conveys the property by any name, the conveyanse,

as between the grantor and grantee, will transfer the title." See, also, *Middleton* v. *Findla* (1864), 25 Cal. 76.

The owner of real estate attesting a deed made by a person having no title, if such owner knows the contents of such deed, will, by attesting it, be

6. estopped from setting up his own title against the grantee and his privies. Devlin, Real Estate §1286a; *Equitable Loan, etc., Co.* v. *Lewman* (1905), 124 Ga. 190, 52 S. E. 599, 3 L. R. A. (N. S.) 879; *Wakefield* v. *Brown* (1888), 38 Minn. 361, 37 N. W. 788, 8 Am. St. 671; *Miller* v. *Bingham* (1856), 29 Vt. 82.

The appellant is in no position to claim that its equities are equal or superior to those of appellee. In

fact, it secured all, if not more than, it was

3. entitled to when the trial court found that its title should be quieted as to the claims of the appellees other than May Bartmess.

The court did not err in its conclusions of law.

Ju'dgment affirmed.