[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has filed a Motion to Strike the Special Defense and Counterclaim of the defendant dated January 11, 1994 and the defendant has filed an objection thereto.
On February 1, 1979, The Silliman Company, Silliman Woodbury Quarries, Inc. and the Iron Ledge Company entered into a written agreement with O G Industries, Inc. ("O G"). The agreement was essentially a contract for the sale of real and personal property. Pursuant to its terms, the three parcels of land (located in Southbury, Woodbury and Bridgeport) and $2,686,714.00 worth of equipment was to be sold to O G. A note in the amount of $3,550,000.00 was provided for in the agreement. This note was secured by mortgages on the land being sold to O G. Payments pursuant to the note were not to be made to the Sellers but rather to a trustee.
The sale contemplated by the agreement was consummated on February 23, 1979, and the note and mortgages were executed in favor of Leonard H. McKane, Trustee. The mortgages were recorded on the respective land records on February 27, 1979. On October 25, 1984, Leonard H. McKane, Trustee assigned the note and mortgages to Frederick L. Comley, Trustee, Peter W. Oldershaw, Trustee and Leonard H. McKane, Trustee ("Plaintiffs"). On February 27, 1993, it is alleged that O G failed to pay the installment of principal and interest due under the terms of the note and mortgages and became in default. The plaintiffs commenced a foreclosure in this action on November 17, 1993 seeking to enforce the terms of the note and mortgages.
On January 11, 1994, O G filed an Answer to plaintiffs' Amended Complaint as well as a Special Defense and Counterclaim. O G claims that the Bridgeport property, which was released from the original mortgage and subsequently sold by O G, was contaminated. The defendant has alleged that the purchaser then demanded that O G pay for the cleanup but O G refused. The defendant next alleged that the purchaser removed the contamination at a cost of "more than $1,300,000.00", and thereafter, on January 19, 1993, demanded that O G reimburse it for the cleanup costs. O G has now pled as a special defense that it is entitled to a set off pursuant to an indemnification from plaintiffs in the agreement. Apparently O G has denied responsibility for the cleanup costs; has not paid a dime of the cleanup costs; has not been found legally responsible for the cleanup costs by any court (and in fact does CT Page 1826 not allege any pending litigation regarding the same); and cannot even state the precise amount of the cleanup costs.
The defendant O G has separately alleged in a counterclaim that it sold materials and supplies to the purchaser of the Bridgeport property and that the purchaser has allegedly refused to pay O G for the goods and services on the basis that O G owed it for the cost of the cleanup. O G now claims that the plaintiffs should reimburse it for the costs of the goods and services provided on the basis of the indemnification clause in the agreement.
Traditionally, the distinction between a set off and a counterclaim centers around whether the claim arises from the same transaction described in the complaint. If the claim involves a debt which is mutual and liquidated, even though it arises from separate transactions, it is characterized as a set off. If the claim arises out of the same transaction described in the complaint, it is characterized as a counterclaim. The title of the pleading is not controlling. Northwestern Electric. Inc. v. Rozbicki, 6 Conn. App. 417, 426, 505 A.2d 750
(1986).
"`The law of set off is governed by General Statutes 139. The relevant portion of the statute provides: "(a) In any action brought for the recovery of a debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt maybe set off against the other." A condition precedent to the application of 52-139 is that the defendant's claim arise from a debt due by the plaintiff. It is the defendant's burden to demonstrate its right of set off by affirmatively and adequately alleging such a claim in the pleadings.'" Elis v. Rogers,15 Conn. App. 362, 365 (1988).
A set off "involves a debt which is mutual and liquidated". Northwestern Electric, Inc. v. Rozbicki, supra.
"A defendant under [the set off] statute, can set off debts only where they are presently due to him." Bridgeport-City Trust Co. v. Niles-Bement-Pond Co., 128 Conn. 4, 10, 20 A.2d 91
(1941).
"A proper set off alleges a debt that is presently due and arising from a contract or liquidated claim. The debt must be CT Page 1827 a mutual one. Mutual debts are cross debts in the same capacity and right and of the same kind and quality: They must exist between the parties in their own right and they must be clearly ascertained and liquidated." Armatino v. Romano,1 Conn. L. Rptr. 60, 61 (November 28, 1989, Cretella, J.), see also Marine Midland Bank v. Gibbs, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 284887 (January 14, 1993, Spear, J.); Chase Manhattan Bank v. Saugatuck Assoc., Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 120911 (January 6, 1993, Rush, J.).
"An equitable set-off exists where the nature of the claim or the situation of the parties is such that justice cannot be obtained by a separate action" Chase Manhattan Bank v. Saugatuck Assoc., supra.
In the present case the debt alleged 1) is not presently due and owing, and 2) is unliquidated. Therefore the plaintiffs' motion to strike the special defense and counterclaim is granted.
WILLIAM J. SULLIVAN, J.